ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

AMANI S. FLOYD (CABN 301506)
DAN M. KARMEL (NYBN 5151485)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5596
   FAX: (408) 535-5066
   Amani.Floyd@usdoj.gov
   Dan.Karmel@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 21-00267 BLF |
| Plaintiff, | UNITED STATES' NOTICE OF INTENTION TO INTRODUCE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS PURSUANT TO RULE 404(B) OR AS INEXTRICABLY INTERTWINED EVIDENCE |
| v. | |
| DONALD SIAO, | |
| Defendant. | |

      The United States hereby provides defendant Dr. Donald Siao with supplemental notice of other crimes, wrongs, and acts it intends to introduce in its case-in-chief at trial. The United States intends to offer the below evidence on the basis that it is inextricably intertwined with the evidence of the crimes charged. *See United States v. Ripinsky*, 129 F.3d 518, 1442 (9th Cir. 1997) (holding that "[e]vidence should not be treated as 'other crimes' evidence, however, and may therefore be admitted for all purposes, when the evidence concerning the other act and the evidence concerning the crime charged are 'inextricably intertwined'") (citing *United States v. Soliman*, 813 F.2d 277 (9th Cir. 1987)). To the extent that the Court rules that the below evidence may be more properly admitted under Federal Rule of Evidence 404(b), the United States will seek its admission pursuant to that rule on the issues of motive,

intent, knowledge, consciousness of guilt, absence of mistake, and lack of accident.

**1.      Undercover Officers' Visits with Dr. Siao and Uncharged Prescriptions Issued by Dr. Siao**

The Superseding Indictment charges Dr. Siao with twelve counts of illegally distributing controlled substances not for a legitimate medical purpose in the usual course of his professional practice. Four of those counts allege one distribution each to four undercover law enforcement officers: a prescription to L.B. on February 26, 2018; a prescription to A.M. on June 18, 2018; a prescription to E.T. on April 10, 2018; and a prescription to D.K. on July 16, 2018.  Each undercover officer, however, visited and received prescriptions from Dr. Siao on four or five separate occasions.  The full history of Dr. Siao's treatment of each undercover officer is inextricably intertwined with the charged distributions because it forms the foundation for determining whether any given distribution was authorized, as well as understanding the information that was available to Dr. Siao at the time that he made these distributions, which is fundamental to proving his knowledge and intent  *See United States v. Keller*, No. 18-CR-00462-VC-1, 2021 WL 5150642, at *2 (N.D. Cal. Nov. 5, 2021) ("Uncharged prescriptions written to [a patient] are admissible as inextricably intertwined with the events charged in Counts One through Ten.").

This evidence also tends to show the defendant's motive, intent, knowledge, absence of mistake, and lack of accident under Rule 404(b)(2) and is relevant to Dr. Siao's issuance of the charged prescriptions to the undercover officers (Counts 1-4 of the Superseding Indictment).  Specifically, this evidence will show that Dr. Siao acted intentionally, knowingly, and without mistake as the office visits and the uncharged prescriptions to the undercover officers were part of a consistent, ongoing pattern of activity that did not change even as Dr. Siao learned additional information showing that his prescriptions to the undercover officers were outside of the usual course and without a legitimate medical purpose.  This evidence is also probative of Dr. Siao's motive as he benefited financially from ongoing patient relationships and visits.

As specified in the parties' joint Motion in Limine No. 2, the United States will introduce evidence in the form of records, recordings, and testimony relating to all the undercover officers' visits with Dr. Siao and both the charged and uncharged prescriptions issued by Dr. Siao.  Additionally, the government will seek to call all four undercover officers: Lottie Bloxsom. Ross Martin, Eric Maher, and Brian McGlinchey, who will provide testimony regarding all the office visits and prescriptions, as set forth below:

| Undercover Officer | Date of Visit/Prescription |
|---|---|
| Lottie Bloxsom a.k.a. "Lacy Blackwell" | Sept. 19, 2017 office visit and prescription for 45 Narco |
| | Oct. 24, 2017 office visit and prescription for 60 Narco |
| | Nov. 21, 2017 office visit and two prescriptions for 75 Narco |
| | Jan. 22, 2018 office visit and prescription for 90 Narco |
| | Feb. 26, 2018 office visit and prescription for 90 Narco and 30 Xanax |
| Ross Martin a.k.a. "Allen McKay" | Jan. 22, 2018 office visit and prescription for 30 Narco |
| | April 10, 2018 office visit and prescription for 30 Narco |
| | May 17, 2018 office visit and prescription for 70 Narco |
| | June 18, 2018 office visit and prescription for 90 Narco |
| Eric Maher a.k.a. "Eric Thrasher" | Feb. 26, 2018 office visit and prescription for 45 Narco |
| | April 10, 2018 office visit and prescription for 60 Narco and prescription for 30 Marinol |
| | May 16, 2018 office visit and prescription for 60 Narco and 30 Xanax |
| | June 18, 2018 office visit and prescription for 75 Narco and 30 Xanax |
| Brian McGlinchey a.k.a. "Doug Kiernan" | May 16, 2018 office visit and prescription for 60 Oxycodone |
| | June 18, 2018 office visit and prescription for 60 Oxycodone |
| | July 16, 2018 office visit and prescription for 75 Oxycodone |
| | August 13, 2028 office visit and prescription for 75 Oxycodone and prescription for 30 Adderall |

The content of what the undercover officers may cover in their testimony is set forth in reports, the undercover officers' patient files, and the recordings of the undercover officers' visits with Dr. Siao— all of which, besides two short videos, have been produced to the defense. *See, e.g.*, Gov't Trial

Exhibits 1-41, US-DS-0001089-1352, US-DS-0002297-2319.[1]

**2.    E.J.'s and A.J.'s Patient Files, CURES Data, and Uncharged Prescriptions Issued by Dr. Siao**

The remaining eight counts in the Superseding Indictment charge Dr. Siao with four distributions to each of E.J. and A.J., two actual former patients of Dr. Siao. For the same reasons as set forth above, evidence regarding Dr. Siao's full courses of treatment for E.J. and A.J. is inextricably intertwined with the charged offenses. This evidence is also admissible because it tends to show the defendant's motive, intent, knowledge, consciousness of guilt, absence of mistake, and lack of accident under Rule 404(b)(2) and is relevant to Dr. Siao's issuance of the charged prescriptions to E.J. and A.J. (Counts 5-12 of the Superseding Indictment). Specifically, this evidence shows that Dr. Siao knew and intended to prescribe opioids to E.J. and A.J. outside the course of usual medical practice and not for a legitimate medical purpose, including due to the numerous red flags that existed throughout Dr. Siao's treatment of E.J. and A.J. This evidence is also probative of Dr. Siao's motive as he benefited financially from E.J. and A.J.'s ongoing patient relationships and visits.

Moreover, this evidence is probative of consciousness of guilt as A.J.'s patient file indicates that Dr. Siao failed to respond to repeated requests for records from the coroner's office following A.J.'s death in December 2019. The government therefore also identifies Dr. Siao's failure to respond to requests for medical records in December 2019 as other acts under Rule 404b. *See United States v. Fox*, 627 F. App'x 608, 609 (9th Cir. 2015) (admitting evidence probative of consciousness of guilty under Rule 404(b)).

As specified in the parties' joint Motion in Limine No. 2, the United States will introduce evidence in the form of records and testimony relating to Dr. Siao's medical treatment of patients E.J. and A.J. that is not charged in the Superseding Indictment. Specifically, the government will seek to introduce E.J.'s and A.J.'s patient files, which include evidence of uncharged prescriptions issued by Dr. Siao, and California's Controlled Substances Utilization Review and Evaluation System ("CURES") data specific to E.J. and A.J. These documents have already been produced to the defense and are listed in the government's Exhibit List. *See* Gov't Trial Exhibits 46, 53, 56-57.

---

[1] The government will be producing two video recordings of undercover officer Brian McGlinchey's March 16, 2018 visit with Dr. Siao. These two videos will be added to the United States' Exhibit List.

The office visits and prescriptions set forth in the patient files that the government will seek to introduce include the following:

| Patient | Date of Visit/Prescription |
|---------|----------------------------|
| E.J. | April 9, 2018 |
| | May 4, 2018 |
| | June 22, 2018 |
| | August 13, 2018 |
| | August 24, 2018 |
| | September 20, 2018 |
| | October 18, 2018 |
| | November 6, 2018 |
| | November 16, 2018 |
| | January 15, 2019 |
| | February 13, 2019 |
| A.J | May 24, 2018 |
| | June 22, 2018 |
| | July 23, 2018 |
| | September 10, 2018 |
| | October 15, 2018 |
| | November 15, 2018 |
| | December 14, 2018 |
| | January 24, 2019 |
| | February 26, 2019 |
| | April 8, 2019 |
| | May 3, 2019 |
| | May 17, 2019 |
| | May 30. 2019 |
| | July 3, 2019 |
| | August 5, 2019 |
| | September 9, 2019 |
| | November 1, 2019 |
| | December 3, 2019 |

3.  **Aggregate CURES and Medicare Part D Data**

As specified in the parties' joint Motion in Limine No. 5, the United States will introduce evidence in the form of records, analysis, and testimony relating to Dr. Siao's practice-wide prescriptions and how

his practice-wide prescriptions compare to those of other physicians in California.  *See*, *e.g.*,  Gov't Trial Exhibits 59-60 (Medicare Part D charts), US-DS-0007262 (Expert Report of Lauren McNulty), US-DS-0004780-5729 (CURES data and analysis).  This data comes from two different sources, CURES and a federal Medicare database.  The government will not, however, seek to introduce patient files for any uncharged patients in its case-in-chief.  *See* Motion in Limine No. 1 ("The parties stipulate and agree that the government will not seek to admit the patient files for Uncharged Patients in the government's case-in-chief").

The CURES and Medicare data are relevant to Dr. Siao's intent and knowledge.  *See United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) ("[W]e hold that uncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support[s] a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose").  The data will show a deliberate practice of giving numerous patients large quantities of powerful drugs and that Dr. Siao's prescribing practice was outside the scope of professional practice for the relevant practitioner groups in California.  This evidence will also show Dr. Siao's lack of accident and absence of mistake with respect to prescriptions to the Charged Patients, specifically that Dr. Siao's prescriptions to the Charged Patients were not an anomaly or the result of Dr. Siao's making a mistake, but rather part of a pattern of Dr. Siao prescribing high amounts of controlled substances to his patients.

### 4.  Testimony of Pharmacists

The United States may also seek to introduce evidence in the form of records and testimony from pharmacists who refused to fill prescriptions written by Dr. Siao.  If called, the pharmacists will testify that they recall having concerns about Dr. Siao's opioid prescriptions.  The government anticipates that the pharmacists who worked at Wal-Mart and who issued Refusals to Fill for prescriptions issued by Dr. Siao may testify.  *See* US-DS-0007266.  Their testimony is relevant to Dr. Siao's knowledge that he was prescribing opioids that were outside the usual course of medical practice, his intent to provide such prescriptions, and absence of mistake because pharmacists, whose job it is to fill prescriptions, believed that at least some of Dr. Siao's prescriptions were improper and raised those concerns with Dr. Siao.  *See Keller*, 2021 WL 5150642, at *2 ("The government may call one or two pharmacists who

contemporaneously notified Keller of their concerns about his prescriptions for other patients around the time of the charged prescriptions to A.M.  As previously mentioned, evidence that other medical professionals communicated concerns about Keller's prescriptions to him is highly probative of his knowledge, intent, lack of accident, and absence of mistake in prescribing to A.M.  *See* Fed. R. Evid. 404(b).  And that probative value is not substantially outweighed by a risk of unfair prejudice. *See* Fed. R. Evid. 403.").

DATED:     May 15, 2023                                   Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


           /s/
AMANI S. FLOYD
DAN M. KARMEL
Assistant United States Attorneys